The topic for oral argument today is people who Rita Brookmyer, formerly known as Rita Jovnitz, 514-0133. Party's ready? We're just going to let the other lawyers take a minute to gather their things. Be safe driving back. Okay, can you spell, say your name for me? Sure, it's Rachel Mamula. Mamula, okay Ms. Mamula, you may proceed. Good afternoon, may it please the court. Pass it. My name is Rachel Mamula and I represent the petitioner, appellate, Rita Jo Brookmyer. Rita's successive post-conviction petition should not have been dismissed without an evidentiary hearing on the veracity of the allegations in the petition and, most importantly, the affidavit of Betty Boyer. Rita's petition raised two claims, an actual innocence claim and a due process claim based on the state's knowing use of perjured testimony. Accepting the petition's allegations and the statements in the affidavits as true and construing them liberally in favor of Rita, as the court must at this stage, at the second stage of post-conviction review, Rita has met her burden to entitle her to the opportunity to prove the truth of the allegations in her petition. We ask this court to reverse the trial court's order dismissing Rita's petition and to remand this case for a third stage evidentiary hearing on both Rita's actual innocence claim and her due process claim. Rita was convicted of first degree murder of Michael Miley in 1989. She was sentenced to life in prison. Betty Boyer was the centerpiece, the linchpin of the state's case against Rita. Betty was the only state's eyewitness to the events on the night of the murder. There was no physical, forensic, or other direct evidence linking Rita to the murder. Rita testified in her own defense at trial and testified that she did not participate in this murder in any way. The prosecutor at Rita's trial summed up Betty's crucial importance for testimony to the state's case, summed it up in his closing argument at trial. Prosecutor told the jury, you've got Betty Boyer and you've got Rita Nith. One of those two people took the witness stand and looked you in the eye and basically told you a bold-faced lie. The prosecutor told the jury, either Betty Boyer is telling the truth or Rita is telling the truth. There is no gray area. It is black and white. And the court, I'm sorry, the prosecutor told the jury, I submit to you that it's Betty Boyer who's the one who's telling the truth. At Rita's trial, Betty testified that she saw Rita give Richard a gun on the night of the murder. That she saw that Rita was there and watched Richard hit Miley with a baseball bat. That she saw Rita help Richard pick up Miley's body and put it into the trunk of the car. That she saw Rita drive off in Miley's car with the body in the trunk. Twenty-five years later, Betty, in a sworn affidavit, says now that she did not testify truthfully at Rita's trial. She says unequivocally she did not see Rita at any time during the assault. And in fact, she did not see Rita again until the following morning, some four to six hours after the assault. Why couldn't this information have become known earlier? Your Honor, that goes to the newly discovered evidence, and yes. You're making an actual innocence claim? Absolutely. This information could not have been discovered earlier. Rita exercised due diligence at the time. She had an investigator who interviewed Betty Boyer before her trial. Her defense counsel called Betty to testify at trial. There was no amount of due diligence that Rita could have done or exercised to get Betty Boyer to tell the truth. This is her third post-conviction petition? That's correct, Your Honor. So the prior two post-conviction petitions, you're saying that there was no way anybody could have determined that Mr. Garnotti had threatened the witness? Nobody asked the question? There was certainly no way to discover that information until Betty told our private investigator that information in 2013. She had never revealed that information before. Well, you said until someone asked her. I'm asking why didn't they ask her the first time or the second time? And they certainly exercised and did everything that they could at the time to get Betty to tell the truth, and she didn't. So you're saying that the questions were asked? There was – no, Your Honor. And she lied?  She was – Rita exercised due diligence through her investigator and defense counsel by calling Betty to the stand to testify, and Betty lied on the stand. Nobody asked Betty during the testimony? Has anybody forced you to give this testimony? Well, Your Honor, Mr. Garnotti asked Betty on the stand, did I tell you what to say, and Betty said no. There was nothing that the defense – How about the defense attorney? The defense attorney attempted to cross-examine her, obviously, but the information that the defense counsel was deprived of, that the defense counsel could not cross-examine her on, was the information that Garnotti had actually told her what to say, had fed her information about Rita's involvement in this murder. In addition, as to the actual innocence claim, it is newly discovered evidence because Betty's reincantation occurred in 2013. There was no reason for Rita to think that Betty was going to recant her testimony when she had testified to that same general version of events in police statements and statements to investigators at Richard's trial, at her trial, and also at Richard's retrial. There was no indication at any time during her prior appeals, and most certainly not at the trial, that Betty had recanted or wavered on the fact that she had said that she saw Rita there. When she testified in Rita's trial, she had already testified at the first NHTSA trial and was subject to cross-examination with the potential of impeachment based upon her prior testimony in Richard's first trial. That's correct, Your Honor, but she had not – Was the cross-examination of her in this trial, Rita's trial, extensive in your view? You know, I read the transcript, and this court on her appeal had described it as a vigorous cross-examination. I think she was cross-examined. I wouldn't go so far as to say it was a vigorous cross-examination. But the point is, Rita or Betty was sticking to her story. She hadn't wavered in her testimony that Rita was there and that she was a participant in this. She didn't do that until 25 years later, and that's when Rita got the evidence to prove her actual innocence or to establish her actual innocence at this stage. What is it about the testimony of Boyer that would make Rita actually innocent? It's new testimony that Rita did not have previously at trial, that she was not there, that she did not help Richard move the body, that she didn't see her four to six hours later, and also didn't give her a gun. Without those two pieces of evidence, the State absolutely had no case against Rita whatsoever. I'm going to turn now, since the question has led there, to the actual innocence claim. Under the Constitution of this State, the wrongful conviction of an innocent person violates that person's right to due process. Rita was convicted of first-degree murder based on the testimony of a single eyewitness, and that eyewitness was Betty Boyer. Betty Boyer has recanted that testimony and admitted that she did not tell the truth at Rita's trial. This is precisely the type of case that the Illinois Supreme Court and other appellate courts in this State have held warrants in evidentiary hearing. As was true in People v. Steudle, where the Illinois Supreme Court remanded for an evidentiary hearing, there was no physical or forensic evidence that linked Rita to this murder, and the State's entire case came down to Betty's now-recanted testimony. The Illinois Supreme Court recently, in People v. Coleman, as Christopher Coleman, clarified that even at the third stage of an evidentiary hearing, it's not Rita's burden to prove her innocence. She's entitled to an evidentiary hearing because her petition presents evidence that is newly discovered, material, non-cumulative, and would probably change the result on retrial. Now, the State concedes that her affidavit is non-cumulative, so I'm not going to talk about that element, and I'm going to start first with the fourth element, that Betty's affidavit would probably change the result on retrial. In People v. Coleman, the Illinois Supreme Court explained that evidence is conclusive enough if the trial for a fact would probably reach a different result if the new evidence places the State's evidence in a new light and undermines our confidence in the jury's verdict. This is where the trial court, in particular, misapplied the legal standard. The trial court had said that Rita had failed to address all of the additional evidence presented against her at trial. That's not the standard. The standard of this is whether or not the new evidence would cast the State's evidence in a different light. Betty's recantation of her testimony that linked Rita to the murder is evidence that would probably change the result on retrial. It places all of the State's evidence in an entirely new light. We cannot have confidence in the jury's verdict. Now, the State concedes, as it must, that Betty's affidavit contradicts her trial testimony. She testified that she saw Rita there. Now she says she never saw Rita during the assault. That statement also contradicts Betty's prior testimony that she saw Rita help Richard move Miley's body and then drive off in his car with the body of a truck. Betty also previously had testified that on that night, Rita and Richard left together, and they returned about 30 minutes later. And it was during that time Betty said she saw Rita give Richard a gun. Betty now says in her affidavit that she left, that Rita and Richard left together, and she didn't see Rita again for four to six hours after the assault. Betty has recanted the very pieces of her trial testimony that held the State's case together against Rita, testimony that linked Rita to the gun, to Miley, to his car, to his death. And because Betty is unquivocal in her affidavit that she saw Richard assault Miley, she's an eyewitness, she did not see Rita there. Betty's recantation negates the factual basis for conviction of first degree murder, that Rita was there, that she helped Richard, that she participated in this crime. And this is particularly true with the State's accountability theory. Betty's affidavit is exonerating evidence that Rita was not present and did not participate in this murder. Without evidence, any evidence, of Rita's participation or assistance, Rita could not have been convicted under an accountability theory. And this is consistent with several cases that we cite in our brief, where the Illinois Supreme Court and other courts have actually overturned accountability convictions because there was no evidence of some affirmative act by the defendant to assist, to abet, or to encourage the commission of the crime. Even the State's case that they cited, People v. Grice, there was eyewitness testimony that put the defendant at the scene of the crime prior to the crime occurring. In light of Betty's recantation, no such evidence exists. What do you say, and I was just looking for it, what do you say about the fact that Mrs. Boyer claimed, before this trial ever occurred, that she had been threatened by government officials that her children would be taken away? That's part of what she's saying now, is new evidence, and yet the claim was made by one of her own attorneys before this trial ever even began. How can that be due diligence on her part? Your Honor, for point of clarification, the new evidence that supports her actual innocence claim is Betty's recantation. Her new testimony that Rita was not there? Yes. That recantation had somebody followed up on the fact that Rita, I'm sorry, that Boyer claimed she made the statement because the police said they were going to take her children away.  So Rita knew, or at least objectively knew, that Boyer had been threatened by police officials, maybe not Garnotti per se, that her children would be taken away if she didn't testify. Now had someone followed up, like Rita's own investigator, it seems to me that would have come out 20-odd years ago or more. And, Your Honor, the standard is due diligence. What did the defendant do to try to figure this stuff out before trial or in court? What did she do before trial? She sent an investigator and Betty stuck to her story. She didn't admit Betty. Betty had a lawyer that said he even heard the threat. And the evidence as to the police threats, as we said in our brief, yes, that was well vetted at the trial court level, but what was not and what Rita did not have was an admission from Betty that she had, in fact, lied at trial. She also did not have any evidence that related to the prosecutor. The state has attempted to cite parts of the record that discuss threats made by police officials. Everything relates to the police. There was nothing in the record as to Garnotti's conduct. In any event, that evidence as it relates to, that really relates to our due process claim, the second claim, which is separate, the actual innocence, the new evidence is the recantation. The Illinois, and in fact, Illinois courts routinely find that recantations like Betty's constitute new evidence. You know, if you accept the fact that, yes, Rita knew Betty was lying at her trial, then if that was the standard, then in every case there would never be an actual innocence case based on a recantation, and that's clearly not the case law in this state. And as I said before, while Rita knew that Betty was lying at her trial, while she did everything prior to her trial to get her to tell the truth, she didn't have the evidence from Betty, the admission, the recantation, until 2013. And that's consistent with the First District and People v. Harper where they said simply there was no amount of due diligence that could have been exercised to get a witness to tell the truth. It's also significant that Betty faced perjury charges that she had admitted at the time that she lied under oath. And she stated in her affidavit that she was and continues to be afraid of the prosecutor and doesn't want to be involved in the case. This explains why Betty had not come forward with the truth earlier. I'd like to touch upon the materiality element. There is here no question that Betty's recantation is material. The prosecutor at Rita's trial told the jury the entire case came down to Betty's testimony. How can the state now claim 25 years later that the recantation of that testimony is not material? The recantation goes to the very heart of this case, the ultimate issue. Who was there? And as I said before, Betty's affidavit contains new evidence that was previously unavailable that supports Rita's defense that she did not participate in this murder. Now I'd like to briefly touch upon Rita's due process claim. Rita, like every citizen in this country, had a constitutional right to due process when she was tried for and convicted of first-degree murder. The state violated her constitutional right when the prosecutor knowingly elicited Betty's perjured testimony at trial. Rita's due process claim is straightforward. Betty stated in her affidavit, Mr. Garnotti fed me information that I had no knowledge of regarding Rita's involvement in the homicide. Mr. Garnotti scared and threatened me to testify about facts of which I had no knowledge. When I testified against Rita, I did not tell the truth. These statements, which the court must accept as true at this stage, establish one, that Betty's testimony was in fact false. And two, that the same prosecutor who elicited Betty's false testimony at trial had previously fed Betty information about Rita's involvement in the homicide and to use Betty's words, information that she had no knowledge of. The state has argued in a brief that Betty's affidavit isn't specific enough or doesn't contain, it only contains conclusory statements. This is belied by the affidavit itself. A nonspecific conclusory statement would be something like, I lied on the stand and the prosecutor knew it. That's not what Betty's affidavit says. She walks through a litany of specific facts, the number of times the prosecutor interviewed her, how he threatened to charge her with murder, to take her kids away from her, how he repeatedly put pressure on her to implicate Rita in this homicide, and that he fed her information about Rita's involvement in this murder. As I mentioned before, Mr. Carnati asked Betty the question, have I ever told you what to say? Betty's response to that question was, no. If you accept the allegations that Betty's petition is true, the prosecutor must have known that the answer to that question was false. Now, Rita is entitled to an evidentiary hearing on this claim because she has satisfied the cause and prejudice test. I'll just very briefly touch upon those. She had cause for not bringing the claim. The objective factor that prevented her from bringing her claim earlier was Betty. Betty had not admitted to perjury before, and she also revealed nothing about the prosecutor feeding her information. As to prejudice, there is a reasonable likelihood that this false testimony could have affected the jury's verdict. The Illinois Supreme Court and other Illinois appellate courts have held that this is particularly true in a case where that witness was the key to the case, was the link to the, linking the defendant to the crime. In this case, no reasonable jury could have convicted Rita of first degree murder without Betty's perjury testimony. Thank you. Thank you. May I please report? My name is Sharon Shanahan, and I represent the people of the state of Illinois. I want to first discuss the newly discovered evidence issue, but I want to touch on something briefly that's common to both of these issues because it always seems, always seems that you never get to spend as much time on the second issue or the third issue or whatever issue it is you'd like to. Since this is common to both of these claims, I'd like to spend a little bit of time on it, and that is why did it take 25 years, three cases with numerous indications that Betty said, oh, I was threatened, I was coerced, they said they would put me in prison. Why, when that's all hanging out there, are you allowed to wait 25 years? Now, I think it's sort of interesting that the defendant says, well, I couldn't have done it before, because I didn't have Betty's affidavit before. How did she get Betty's affidavit? She sent a private investigator and says, hey, what do you think? She said it, they did this, they sent a private investigator out two years ago. Why not 20 years ago? Why not in the first post-conviction petition? Why not in the second post-conviction petition? The fact that Betty had, I mean, Betty testified at trial under cross-examination. The state police, what terms she used, threatened to take my children away if I didn't testify. I mean, she said that on cross-examination. The private investigator that was working for the defendant at that time said the same thing. Betty Boyer told me she was threatened. Her own attorney testifies in Richard Nitz's post-conviction, I mean, post-trial hearing prior to the sentencing. And she's, and he says, Betty Boyer says that they fed her information. Betty Boyer says that they were threatened. That's Rita's lawyer. So how you actually get past the due diligence for the acts of innocence claim and how you get past the cause prong of the cause and prejudice test, which requires you to establish why there was something that impeded you from raising the claim in an early proceeding, to me, that's fatal to both of these claims. To say, well, we didn't have this affidavit before because we didn't ask for it before. I mean, to me, that's when I see this happening. In 2013, they asked for it, and they got it. They had to say she's not available. Well, number one, why not that they found her when they were looking for her? And number two, she was here in 1998, 10 years after the murder, and testified in her second trial. So she hadn't been in Colorado for 25 years. She's been available. They've always been able to get her into court anytime they needed her in court. And the specific question here of the force put on her to testify has been raised before her trial. It's been raised during her trial. If this was important, if it's true, Betty's affidavit is true, which at this point we have to take it, then there's no excuse for not delving into this 25 years ago, 20 years ago, 10 years ago. There's no reason to not wait for 25 years. So that's my applause to both sections argument. I want to really briefly point out a couple of things. One thing that I think is very important is that in a second-stage post-conviction petition, you take the evidence presented as true if it's not positively rebutted by the record. Betty's affidavit, we take it as true if it's not positively rebutted by the record. Betty's affidavit says, I was home with Rita's sick son all night long. Rita wasn't there. Rita's testimony, now we can say Betty lied in her first trial because of this and that, but we're talking about Rita. Rita's whole theory of her case was, I wasn't with Richard that night. I was home with my sick child. So Rita's own testimony, her theory of the case directly conflicts with this new affidavit and is positively rebutted by the record. I don't think, you know, second stage, it doesn't really matter whether you're talking about the cause of prejudice or the actual innocence. If it is positively rebutted by the record, then it's positively rebutted by the record. You don't need to go any farther. So I think the other thing I want to mention briefly here is that Rita was never charged with murdering Michael Miley. And Betty never said Richard didn't murder Michael Miley. Rita's conviction has always been based on accountability. There's some language in the opening brief and again in the reply brief about how there's  No, there's not, because Michael Miley was decapitated. He was thrown in a car. He was driven about 15 miles from where the Nitzes lived. And his head's never been recovered. Nobody knows how he died, so it doesn't matter whether there was evidence of a shooting or not. That's kind of a red herring. So the other thing I want to, this kind of goes back to my earlier argument, probably I would say the thrust of my argument is that Betty Boyer hasn't just been gone and you couldn't possibly get this affidavit before then. Repeated case law in the state of Illinois says that evidence is not newly discovered when it presents facts already known to the defendant at or prior to trial, though the sources of those facts may have been unknown, unavailable, or uncooperative. So to me, you say, well, she's in Colorado. Well, that makes her kind of unavailable, although, again, they found her. They got this affidavit. She says that she was afraid of Chuck Arnotti. Again, that makes her uncooperative, but it doesn't make, follow this case law that says that it's required to be more than that. Ms. Boyer's affidavit says she's come forward now because she feels it's the right thing to do, and she says that she didn't want to get involved because she was scared, the state's attorney. But that merely excuses her failure to come forward sooner on her own accord, and it does not address the question of the due diligence of the defendant, and that's what we're dealing with here is not Betty's diligence, but Rita's diligence. As far as the factors that have to be proved here, I want to note that this is a conclusive list, that it is new and material and non-cumulative and would probably change the result on retrial. And you've got to have all of those things. So if you lean forward and you say, well, you know, maybe this would change the outcome on retrial. As we've argued in our brief, probably not because the state's not going to just sit there while Betty Boyer comes up and tells an entirely new story to the jury. They're going to bring in her sworn testimony as substantive evidence. But nonetheless, even if you say it might, just that alone is not enough. And as Justice Cates noticed when we were discussing whether this actually would prove her actually innocent, that's the standard, actually innocent, not beyond reason. This is actually innocent, total vindication, exoneration. All this affidavit says is, I looked out the window, I saw, well, first it says Rita and Richard left together. Then it says, I saw Richard come back. I saw Richard hit somebody with a baseball bat. And then I was so scared I ran and hit him. I mean, I'm paraphrasing, but that's pretty much what it says. Again, nobody's ever said, Rita hit Michael Miley on the head with a baseball bat. She's charged with accountability. She, by Boyer's own admission in this new affidavit, as soon as she saw Richard hit someone on the head with a baseball bat, she left. She went into a back bedroom. She didn't want to see anymore. She didn't want Richard to see her see anymore. So, does this prove total vindication? Does it exonerate her from murder by accountability? I think the state would argue that it does not. Now, I really don't have a lot more to say unless you have some questions. Thank you, Your Honor. Thank you, Ms. Sandlin. If I may just briefly address a few points. The question's been asked, why did it take 25 years to find Betty Boyer? The last time someone stood in this court on behalf of Rita Brookmeyer was 22 years ago on her direct appeal. Rita has been pro se. She's been incarcerated. And as evidenced in the affidavit of our private investigator, finding Betty in another state was not an easy process. It's not certainly something Rita could have done from prison. Again, as I said before, the due diligence that's been exercised here occurred at the time of trial. Rita's counsel did everything that he could at the time to try to get Betty to tell the truth. Betty didn't tell the truth. She has, though, today. And that evidence is before you. The truth, to touch upon the point that, how does this establish her actual innocence? How does this show her total vindication? And again, as I said when I was up here before, that's not the standard at this stage. The standard is, have we made a substantial showing that the evidence is new, non-cumulative material about the character that would likely change the result of a retrial? It's a substantial showing to get to an evidentiary hearing. All factual disputes fall by the wayside. And that's the purpose of an evidentiary hearing, is to address those issues. The affidavit at this stage, accepting all of the statements in it as true, Betty says Rita was not there during critical moments that held the state's case together. She said she did not see Rita there at any time during the assault. Counsel, I was going to ask you earlier, let me follow up and ask you now, on the factor of what probably changed the result on retrial. Doesn't Boyer's affidavit, recantation affidavit, conflict with Rita's testimony at trial? Didn't Rita testify that she was there? Rita's testimony was that she was inside the trailer. Inside the trailer, yeah. The crime or the assault occurred outside in the driveway, so two different locations. And Betty's affidavit says that Rita was not there when Richard was assaulting Miley in the driveway. So in that conflict, though, I mean, how is it not a conflict? It's entirely consistent with Rita's defense that she was not there. And at this stage, anything that relates to the factual disputes as to time and conflicting testimony or other evidence, that is the reason we have evidentiary hearings. It would be an error for the court at this stage to make a judgment as between Rita's trial testimony and Betty's affidavit to make any kind of credibility determination or factual determinations at this stage. But what's important, for purposes of her actual innocence claim, is they're entirely consistent that she didn't participate in this murder. And because of that, and because it makes a substantial showing for actual innocence, she's entitled to at least the opportunity to prove the truth of the allegations in her petition as well as the affidavit. Next month, Rita will be in prison for 27 years. And today, before the court, we presented compelling new evidence of her actual innocence that is new, non-cumulative material, certainly of a quality and nature that would likely change the results on retrial. And also, new information that the prosecutor had engaged in misconduct in feeding information to Betty about this homicide and then elicited Betty's false testimony at trial. For 27 years, Rita has maintained her innocence. And we are here today to ask for an evidentiary hearing, an opportunity to prove the truth of her petition, to prove the truth of the allegations in Betty Boyer's affidavit. Again, I want to reiterate the relief that we are requesting. We're asking this court to reverse the trial court's order dismissing her successive petition and to remand this case for a third stage evidentiary hearing. There's no more questions. No, thank you very much. Thank you. Okay, this matter will be taken under advisement and a disposition issued in due course. That completes the docket for today. Court is adjourned. All rise.